**EIGHTY–FOUR MINING COMPANY,**
**Petitioner,**

v.

**THREE RIVERS REHABILITATION,**
**INC., Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 22, 1996.

Decided Jan. 9, 1997.

Reargument Denied Feb. 25, 1997.

Phyllis T. Procopio, Pittsburgh, for petitioner.

No appearance entered for respondent.

Before McGINLEY and PELLEGRINI, JJ., and RODGERS, Senior Judge.

McGINLEY, Judge.

Eighty-Four Mining Company (Eighty-Four) appeals the decision of the hearing officer of the Department of Labor and Industry, Bureau of Workers' Compensation (Bureau) granting an application for fee review filed by Three Rivers Rehabilitation, Inc., (Three Rivers).

On November 10, 1993, Joseph Sciulli (Claimant), an employee of Eighty–Four, sustained a work-related injury. Subsequently, he sought treatment with Dr. William W. Frost, Jr. (Dr. Frost), a board certified medical doctor in physical medicine and rehabilitation. Dr. Frost recommended a treatment plan for Claimant. Claimant received treatment from Three Rivers and Claimant's medical bills were sent to Eighty–Four for payment. Eighty–Four believed that the bills resulted from a prohibited self-referral and refused to pay them.

On March 7, 1994, Three Rivers filed an application for fee review pursuant to Section 306(f.1)(5) of the Workers' Compensation Act (Act).[1] The Bureau rendered an administrative decision that Eighty–Four was untimely in its payment of medical fees to Three Rivers. Eighty–Four requested an appeal conference concerning the administrative decision. On December 11, 1995, the Bureau assigned the medical fee review application to a hearing officer. On February 13, 1996, a hearing was held.

The hearing officer made the following findings of fact:

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(5). Section 306(f.1)(5) provides:

    The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). A provider who has submitted the reports and bills provided by this section and who disputes the amount or timeliness of the payment from employer or insurer shall file *an application for fee review* with the department. Within thirty (30) days of the filing of such an application, the department shall render an administrative decision. (Emphasis added).

1. Dr. William W. Frost, Jr. is a medical doctor with board certification in the specialty of physical medicine and rehabilitation.

2. In May, 1988, Dr. Frost incorporated the professional corporation known as Three Rivers Rehabilitation of Pittsburgh, Inc. (corporation).

3. Dr. Frost was, at all times relevant to this matter, the sole owner of the corporation and was considered an employe of the corporation.

    ....

5. At all times relevant to this matter the corporation rented space at 95 Leonard Ave, Washington, PA, for its operation. Dr. Frost's office was located within the rented space of his corporation.

6. Dr. Frost's office in the corporation's spaces at 95 Leonard Ave, Washington, PA. opened into the physical therapy arena and Dr. Frost was present in the corporation's suite and available to provide assistance at all times that therapy services were being performed.

7. All rent paid for the space located at 95 Leonard Ave, Washington, Pa, was paid by the corporation. This rent included the space occupied by Dr. Frost's office.

8. The corporation operated as a self-contained medical facility providing physical medicine and rehabilitation.

9. The corporation's staff consisted of a multi-disciplinary team including an office manager, a case manager (college trained) who served as the patient screener, Dr. Frost as the physician, a certified physical therapist with special training from Dr. Frost and physical therapy assistants.

10. The corporation's physical facilities included testing equipment and equipment to provide medical treatment and physical rehabilitation.

11. For patients such as the claimant in this matter, Dr. Frost and other members of the staff of the corporation performed an initial evaluation including examination of the patient and appropriate testing from which a therapy plan would be developed. After the initial evaluation, the staff would have periodic meetings to ensure that the treatment program was being followed. Changes or refinements to a treatment program would be made by Dr. Frost.

    ....

13. Billing for services provided by the corporation, whether specifically provided by Dr. Frost or the physical therapist, would be sent to the corporation billing department on a weekly basis and billed under the corporate name using the corporate tax identification number.

Hearing Officer's Decision, May 3, 1996, (Decision), Findings of Fact 1–3, 5–11 and 13; Reproduced Record at 176a–177a. The hearing officer determined that Dr. Frost was acting within his role as Three Rivers' staff physician when he prescribed physical therapy for Claimant. The hearing officer concluded that Dr. Frost was not making a prohibited referral to a separate entity, granted the fee review application and ordered Eighty–Four to pay Claimant's medical bills.

Eighty-Four contends that the hearing officer erred as a matter of law by directing payment. Eighty–Four asserts that Dr. Frost's referral to Three Rivers is prohibited under Section 306(f.1)(3)(iii) of the Act, 77 P.S. § 531(3)(iii), one of the workers' compensation medical cost containment provisions which became effective August 31, 1993. *See,* Act 44, the Act of July 2, 1993, P.L. 190.

Section 306(f.1)(3)(iii) proscribes referrals of workers' compensation claimants by health care providers for medical treatment, *including physical therapy,* to entities in which the providers have a financial interest:

Notwithstanding any other provision of law, *it is unlawful for a provider to refer a person for* laboratory, *physical therapy,* rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods or services pursuant to this section *if the provider has a financial interest with the person, or in the entity, that receives the referral.* It is unlawful for a provider to enter into an arrangement or scheme such as a cross-referral arrangement, which the provider knows or should know has a principal purpose of assuring referrals by the provider

to a particular entity which if the provider directly made referrals to such entity, would be in violation of this section. *No claim for payment shall be presented by an entity to any individual, third-party payer or other entity for a service furnished pursuant to a referral prohibited under this section.* (Emphasis added).[2]

The record reveals that Dr. Frost, the sole owner of Three Rivers, referred the Claimant to his own facility for physical therapy treatment. This is precisely the type of self-referral that the workers' compensation medical cost containment provision of Section 306(f.1)(3)(iii) was designed to prevent. Where the language of a statute is unambiguous a reviewing court must read the statute's provisions in accordance with their plain meaning and common usage. *Department of Transportation, Bureau of Driver Licensing v. Lear,* 151 Pa.Cmwlth. 138, 616 A.2d 185 (1992) Eighty–Four is not obligated to pay the medical bills submitted by Three Rivers.

Accordingly, we reverse.

RODGERS, Senior Judge, dissents.

2. We note that pursuant to Sections 401.1 and 435 of the Act, 77 P.S. §§ 710 and 991, the Bureau adopted a regulation providing exceptions to the prohibition against self-referrals:

Referrals permitted under all present and future Safe Harbor regulations promulgated under the Medicare and Medicaid Patient and Program Protection Act at 42 U.S.C.A. § 1320a–7b ... published at 42 CFR 1001.952 (relating to exceptions), and all present and future exceptions to the Stark Amendments in the Medicare Act at 42 U.S.C.A § 1395nn, and all present and future regulations promulgated thereunder are not prohibited referrals involving financial interest. An insurer may not deny payment to a health care provider involved in such transaction or referral.

34 Pa.Code § 127.301. The exceptions cited within this regulation provide safe harbors from criminal prosecution for sundry health care payment practices including certain returns on investments, payments made to lessors for the use of space or equipment, payments to agents for services, payments received in the sale of physicians' practices, payments to qualified referral services, payments under warranties, discounts on goods or services, payments by employers to employees, payments by vendors to group purchasing organizations, waivers of Federal or State health care beneficiaries' obligations, increased coverage or reduced costs and premiums offered by health plans and price reductions offered to health plans. 42 C.F.R. § 1001.952.

## ORDER

AND NOW, this 9th day of January, 1997, the order of the hearing officer in the above-captioned matter is reversed.

The exceptions also exclude the following from the general prohibition against physician self-referrals: physician services provided by a physician in the same group practice, ancillary health care services furnished where the referring physician also provides certain unrelated services, services provided by organizations pursuant to designated prepaid plans, ownership interests in publicly traded securities and mutual funds, services provided in Puerto Rico and certain rural areas, services provided by designated hospitals, services provided pursuant to physician incentive plans, payments by hospitals to physicians, some isolated financial transactions, certain group practice arrangements and payments by physicians for goods and services. 42 U.S.C. § 1395nn.

These exceptions were not effective when Claimant's medical bills were generated in 1994. *See* 25 Pa.B. 4875 (1995) (explaining the deletion of the retroactive effective date). Additionally, the hearing officer did *not consider the regulation to determine whether the referral was prohibited. See,* Decision n. 1. The legislative intent behind Section 306(f.1)(3)(iii) must be determined without consulting this regulation. In so doing we do not preclude the application of the adopted referral standards in future fee disputes. It is, however, worth noting that our review of the record in this case convinces us that none of the exceptions to the prohibition against self-referrals would have applied.